1 **WO**                                                                                    JDN

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9   Bruce Allison Gamble,                    )   No. CV 12-790-PHX-GMS (LOA)
                                             )
10                Plaintiff,                  )   **ORDER**
                                             )
11  vs.                                      )
                                             )
12  Joseph M. Arpaio, et al.,                )
                                             )
13                                           )
                                             )
14                Defendants.                )
                                             )
15  _____ )

16        Plaintiff Bruce Allison Gamble filed this pro se civil rights action under 42 U.S.C.

17  § 1983 against Maricopa County Sheriff Joseph M. Arpaio (Doc. 21).  Before the Court are

18  Defendant's "Motion to Enforce Release and Motion to Dismiss with Prejudice" (Doc. 33)

19  and Plaintiff's Motion for Preliminary Injunction (Doc. 35).

20        The Court will deny both motions.

21  **I.    Background**

22        Plaintiff initiated his claim in April 2012 (Doc. 1).  In his Third Amended Complaint,

23  Plaintiff alleged that, during his confinement at the Maricopa County Sheriff's Office

24  (MCSO) Jail, Defendant violated his First Amendment rights by restricting incoming mail

25  to just postcards (Doc. 21 at 3).  Plaintiff claimed that as a result of this policy, he could not

26  receive financial paperwork, e-mails, and other pertinent communications from his business

27  associates relevant to the marketing of his CD "Dream After Dream" (id.).

28

1    In 2007, Plaintiff brought a lawsuit against Defendant in which he alleged that on May

2    24, 2007, Defendant implemented a policy restricting incoming mail to metered postcards.

3    CV 07-1141-PHX-GMS (Doc. 5 at 3).  Plaintiff claimed that Defendant's policy effectively

4    terminated his music business correspondence and interfered with family communications.

5    Id.  In the 2007 case, the parties reached a settlement and stipulated to dismissal with

6    prejudice.  Id. (Docs. 38-39).

7    In the instant action, Defendant filed a "Motion to Enforce Release and Motion to

8    Dismiss with Prejudice," which argues that in the 2007 case, Plaintiff agreed to release

9    Defendant from any liability for future First Amendment claims arising out of the jail's

10   postcard policy (Doc. 33 at 2-3).

11   Meanwhile, Plaintiff filed a Motion for Preliminary Injunction, which seeks to enjoin

12   Defendant from enforcing his postcard policy at the jail (Doc. 35).

13   **II.    Defendant's Motion to Enforce and Motion to Dismiss**

14           **A.    Parties' Contentions**

15                   **1. Defendant's Motion**

16   Defendant asserts that the Court may properly consider the Release because it was

17   incorporated by reference in Plaintiff's pleadings (Doc. 33 at 3-4, citing Docs. 21 and 1).

18   Defendant maintains that, when considering the Release, Plaintiff's current claim is barred

19   because (1) Plaintiff entered into the Release voluntarily and with full knowledge of the

20   terms and their significance; (2) the gravamen of the 2007 case and the present action are the

21   same—that Defendant's postcard policy violates Plaintiff's First Amendment rights; and

22   (3) by its express language, the Release forever barred any claims relating to alleged First

23   Amendment violations arising out of the postcard policy (Doc. 33 at 5-7).  Defendant argues

24   that the Release expressed the parties' clear intent that Defendant would "not be subject to

25   any future claims arising out of the MCSO postcard policy whether or not those claims were

26   specifically known to Plaintiff at the time of the Release" (id. at 8).

27                   **2. Plaintiff's Response**

28   In response, Plaintiff points to language within the Release stating that the agreement

- 2 -

1   specifically applies "to AN INCIDENT that occurred on or about . . . May 24, 2007," and he

2   contends that the previous settlement was limited to that incident (Doc. 37 at 1) (emphasis

3   added by Pl.).  Plaintiff acknowledges that his previous lawsuit referenced music; however,

4   he avers that the current claim is different because it is specific to the hampering effects

5   Defendant's postcard policy places on Plaintiff's recent music-marketing venture and

6   communications with his current business associates—Puf & Stuf, Conspire & Lost Leaf

7   nightclubs, Disney, Inc., and other marketing entities (id. at 2, 4).  He states that his current

8   claim is an "island of itself" and does not depend on any past documents or allegations, nor

9   do any past claims form any basis of his current complaint (id. at 4).  Plaintiff notes that he

10  is not a lawyer, and he alleges that it is unconscionable that he could have been deceived into

11  believing that the prior agreement concerned anything but the incidents described at the time

12  of settlement (id. at 2).

### 3.  Defendant's Reply

14       In reply, Defendant notes that the May 24, 2007 "incident" referenced in Plaintiff's

15  2007 case is his allegation that "effective 5-24-07 [Defendant] implemented a policy

16  restricting incoming mail to metered postcards . . . ." (Doc. 38 at 2, citing CV 07-1141-PHX-

17  GMS, Doc. 3 at 3).  Defendant contends that Plaintiff is complaining about the same

18  "incident" in his current case; namely, the implementation of the postcard policy (Doc. 38

19  at 2).  Defendant further contends that Plaintiff is also alleging the same consequences and

20  injuries as he did in the 2007 case (id.).  Defendant notes that in 2007, like in the current

21  case, he alleged that the policy precluded him from receiving mail related to his CD "Dream

22  After Dream" as well as mail from family, and that this caused him emotional distress and

23  money damages (id., citing CV 07-1141, Doc. 5 at 3, 6).  Defendant asserts that the sole

24  difference between the two cases is the timing of the alleged injuries resulting from the

25  "incident" (Doc. 38 at 2) that the language in the Release bars Plaintiff's current claim

26  because it released Defendant from all claims arising out of the postcard policy that were

27  "known and unknown," "foreseen and unforeseen," and "which hereafter may be asserted

28  by" Plaintiff (id. at 2-3).  Defendant states that without these provisions, he could not have

1  achieved the finality he bargained from via the settlement because he could not have known

2  when Plaintiff might subsequently return to the jail and be subject to the same policy (id. at

3  3).

4        **B.      Governing Standard**

5        Generally, the interpretation and enforcement of a settlement agreement is governed

6  by principles of state contract law. See Botefur v. City of Eagle Point, 7 F.3d 152, 156 (9th

7  Cir.1993); Hisel v. Upchurch, 797 F. Supp. 1509, 1517 (D. Ariz. 1992). But "conditions

8  affecting the validity of a release of significant federal rights are eminently a matter of

9  federal law." Jones v. Taber, 648 F.2d 1201, 1203 (9th Cir. 1981).

10       Settlements and releases assertedly entered into in respect of federal litigation
         already in progress implicate federal procedural interests distinct from the
11       underlying substantive interests of the parties. Once a claim—whatever its
         jurisdictional basis—is initiated in the federal courts, we believe that the
12       standards by which that litigation may be settled, and hence resolved short of
         adjudication on the merits, are preeminently a matter for resolution by federal
13       common law principles, independently derived.

14  Hisel, 797 F. Supp. at 1517 (quoting Gamewell Mfg., Inc. v. HVAC Supply, Inc., 715 F.2d

15  112, 115 (4th Cir. 1983)). Thus, federal common law controls the effect and interpretation

16  of a release of a § 1983 claim, and it is unnecessary to examine state law. Hisel, 797 F. Supp.

17  at 1517-18 (citing Town of Newton v. Rumery, 480 U.S. 386, 392 (1987)); see Jones, 648

18  F.2d at 1203 (in analyzing whether a release of federal rights is valid, it is unnecessary to

19  examine state authorities).

20       A release of claims for violations of civil and constitutional rights must be voluntary,

21  deliberate, and informed. Jones, 648 F.2d at 1203. Whether a release is voluntary,

22  deliberate, and informed is determined on a case by case basis considering the totality of the

23  circumstances surrounding the execution of the release. See Stroman v. West Coast Grocery

24  Co., 884 F.2d 458, 462 (9th Cir. 1989). In this analysis, a court considers four factors:

25  (1) "the clarity and lack of ambiguity of the agreement"; (2) "the plaintiff's education and

26  business experience"; (3) "the presence of a non-coercive atmosphere for the execution of

27  the release"; and (4) "whether the [plaintiff] had the benefit of legal counsel." Id. (citations

28  omitted). Further, under federal law, a valid release must be supported by consideration.

- 4 -

1
2
3

Salmeron v. United States, 724 F.2d 1357, 1362 (9th Cir. 1983).  The party seeking to rely on a release in a § 1983 action has the burden of proving its validity.  See Jones, 648 F.2d at 1203-04.

4

**C.     Discussion**

5
6
7
8
9

The Release at issue states that in consideration of $1,000, Plaintiff will release and "forever discharge" Defendant from "any and all actions and causes of actions" and "from any and all liability arising out of . . . an incident that occurred on or about May 24, 2007 in the Fourth Avenue Jail and referenced in cause number CV07-01141-PHX-GMS (LOA)" (Doc. 33, Ex. 1).

10
11
12
13
14
15
16
17
18
19

The parties dispute whether it is clear and unambiguous that "an incident that occurred on or about May 24, 2007" refers to the jail postcard policy.  As noted by Defendant, in his 2007 case, Plaintiff's Complaint referenced the postcard policy that was "effective 5-24-2007."  CV 07-1141 (Doc. 5 at 3).  Plaintiff construes the "incident" raised in his 2007 case to be his claim regarding how the postcard policy affected him, which he argues is different from the claim in the instant case (Doc. 37 at 1-2, 4).  "An agreement need not specifically recite the particular claims waived in order to be effective."  Stroman, 884 F.2d at 461.  Nonetheless, in using the word "incident" and failing to refer specifically to the postcard policy or even to mention the words postcard or policy at all in the agreement, the drafters of the Release—Defendant and Maricopa County—left room for ambiguity.

20
21
22
23
24
25
26

With respect to the other factors, the record shows that Plaintiff is a musician who has worked with business associates to produce a CD (see Doc. 37 at 2 & Ex. 5); however, he is not an attorney and there is no evidence that he attended college.  See Stroman, 894 F.2d at 462 ("[w]e note that Stroman's work experience and college education were particularly relevant to our determination of a knowing and voluntary waiver").  Neither party presents facts regarding the atmosphere surrounding the execution of the release, and there is no evidence that Plaintiff had any advise from counsel when he signed the Release.

27
28

When viewing the totality of the circumstances, the Court cannot conclude that the release of claims for constitutional violations was voluntary, deliberate, and informed such

1 that Plaintiff knowingly and deliberately released Defendant from all liability for First

2 Amendment violations including those not alleged in the 2007 case and that might occur after

3 execution of the Release. Accordingly, Defendant's "Motion to Enforce Release and Motion

4 to Dismiss with Prejudice" will be denied.

5 **III.    Plaintiff's Motion for Preliminary Injunction**

6 In his one-page motion, Plaintiff asks the Court to enjoin Defendant from enforcing

7 the postcard policy because he has suffered injuries as a result of this policy and it affects all

8 detainees (Doc. 35). Defendant opposes the motion; he asserts that Plaintiff does not satisfy

9 the preliminary-injunction standard and the motion is otherwise moot because Plaintiff is no

10 longer housed at the jail (Doc. 39 at 3-10). Defendant proffers evidence that in May 2012,

11 Plaintiff was released from the MCSO jail and transferred to the Arizona Department of

12 Corrections (id., Ex. 2, Chad Wagner Decl. ¶ 4 & Ex. E).

13 Plaintiff did not file a reply.

14 Plaintiff's motion fails to address any of the factors relevant to a preliminary

15 injunction. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (movant

16 must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable

17 harm in the absence of preliminary relief, that the balance of equities tips in his favor, and

18 that an injunction is in the public interest"). Moreover, Plaintiff's request for injunctive relief

19 is moot because he is no longer confined at the MCSO jail. See Dilley v. Gunn, 64 F.3d

20 1365, 1368 (9th Cir.1995) (an inmate's transfer from a prison while his claims are pending

21 will generally moot any claims for injunctive relief relating to that prison's policies).

22 Plaintiff's motion for injunctive relief will therefore be denied.

23 **IT IS ORDERED:**

24 (1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion to

25 Enforce Release and Motion to Dismiss with Prejudice (Doc. 33) and Plaintiff's Motion for

26 Preliminary Injunction (Doc. 35)

27 (2) Defendant's Motion to Enforce Release and Motion to Dismiss with Prejudice

28 (Doc. 33) is **denied**.

(3) Plaintiff's Motion for Preliminary Injunction (Doc. 35) is **denied**.

DATED this 8th day of May, 2013.

*A. Murray Snow*

/G. Murray Snow
United States District Judge